# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDRE LAMAR JONES,

Defendant-Appellant.

UNPUBLISHED
May 8, 2018

No. 333377
Oakland Circuit Court
LC No. 2015-256212-FH

Before: BORRELLO, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree criminal sexual conduct (victim less than 13 years old), MCL 750.520c(2)(b). Defendant was sentenced to 180 days in jail and five years' probation. We affirm.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises several arguments relating to the effectiveness of defense counsel at trial. Although we find none to be persuasive, each is addressed in turn.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). A trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id.* at 188. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). When the trial court does not hold a *Ginther*[1] hearing, as is the case here, this Court's review is limited to mistakes apparent from the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is a defendant's burden to prove "(1)

---

[1] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188, citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290, citing *Strickland*, 466 US at 694–696. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defense counsel has wide discretion regarding strategy at trial "because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). This Court will not substitute its judgment for that of defense counsel concerning matters of trial strategy. See *Strickland*, 466 US at 689; *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). There is a strong presumption that counsel engaged in sound trial strategy. *Horn*, 279 Mich App at 39. The fact that a trial strategy fails does not mean that its use constitutes ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

## A. HENDERSON'S TATTOO

Defendant first alleges that defense counsel was ineffective for failing to investigate and introduce evidence that the boyfriend of the minor child victim's mother has a tattoo matching a description of a tattoo given by the minor child during a Care House interview. We disagree.

During the Care House interview, the interviewer asked the minor child to describe defendant's appearance. The interviewer asked the minor child if defendant had any tattoos, and the minor child said that he had a dragon tattoo, but she forgot where. The minor child thought the tattoo was on defendant's back. The minor child described the tattoo as a "big China dragon," with a nose, an eye, and "cool colors." At the preliminary examination, defense counsel asked the minor child whether she recalled telling someone during the Care House interview that defendant had a tattoo. The minor child did not recall saying that, and she did not recall defendant having a tattoo. At trial, the minor child first said that she did not remember being asked at Care House if defendant had a tattoo, and then she remembered saying that he had a Chinese dragon tattoo. The minor child did not remember defense counsel asking about a tattoo at the preliminary examination. The minor child understood that she had to tell the truth at Care House and at the preliminary examination, but regarding the inconsistency, the minor child stated:

> But when I went to the Care House, I remembered like – some things – some things I remember[,] but then when I go to another place, I just don't – I just forgot some things.

When defendant filed his motion for a new trial in the trial court, he attached an affidavit that he signed indicating that he reviewed the discovery packet and Care House video with defense counsel, and gave her his notes indicating that he did not have tattoos, but minor child's mother and her boyfriend did. Defendant claimed that he and defense counsel had also discussed this in person. Defendant attached the handwritten notes he referred to in his affidavit to his

motion, as well as photographs taken from the Facebook page of minor child's mother showing the arm tattoo belonging to the boyfriend of the minor child's mother.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy . . . ." *Horn*, 279 Mich App at 39. Such matters of trial strategy are not second-guessed by this Court. *Id*. The failure to call or question witnesses, or the failure to present other evidence, constitutes ineffective assistance of counsel only when it deprives the defendant of a "substantial defense." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). " 'A substantial defense is one that might have made a difference in the outcome of the trial.' " *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009), quoting *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). "When a defendant alleges ineffective assistance of counsel, he must present a record which factually supports his claim." *People v Armstrong*, 124 Mich App 766, 770; 335 NW2d 687 (1983). When there is no record evidence to support a defendant's claim, this Court has no basis to consider the claim. *Id*.

Defendant has not demonstrated that defense counsel's performance fell below an objective standard of reasonableness, or that there was a reasonable probability that but for defense counsel's failure to admit evidence of the mother's boyfriend's tattoo, the outcome of trial would have been different. *Lockett*, 295 Mich App at 187. Although the trial court referred to the discovery of the boyfriend's tattoo as a "zinger," it is not clear that the minor child was actually describing his tattoo. In fact, during the Care House interview, the minor child said that defendant had a tattoo of a colorful Chinese dragon on his back, however the boyfriend's tattoo is located on his arm, and is an all-black "tribal mark." Accordingly, we conclude that defendant has not demonstrated that the failure to admit this evidence deprived him of a substantial defense. *Russell*, 297 Mich App at 716; *Chapo*, 283 Mich App at 371, quoting *Kelly*, 186 Mich App at 526.

## B. IMPEACHMENT OF THE MINOR CHILD

Second, defendant argues on appeal that defense counsel was ineffective for failing to impeach the minor child regarding multiple inconsistent statements that she made. By way of example, defendant points to inconsistencies in the minor child's Care House interview and her preliminary examination testimony and trial testimony regarding whether defendant used the bathroom before the touching, her failure to describe his facial hair, and whether defendant had led her by the hand or carried her to his bedroom.

As stated above, defense counsel has wide discretion regarding trial strategy, *Heft*, 299 Mich App at 83, and how to question a witness is a matter of trial strategy, *Horn*, 279 Mich App at 39. The failure to question a witness or present evidence constitutes ineffective assistance of counsel only when the defendant is deprived of a substantial defense. *Russell*, 297 Mich App at 716.

Defendant is correct that the minor child did not include defendant going to the bathroom in her recollection of the events leading to the touching during her Care House interview, but she did indicate that defendant went to the bathroom during her preliminary examination testimony and again at trial. Additionally, the minor child stated at Care House that defendant took her to

his room by hand, but said that he carried her at the preliminary examination and at trial. Although defense counsel did not attempt to impeach the minor child on these statements, they are minor points in the minor child's otherwise consistent testimony, and defense counsel impeached the minor child on other major points.

For instance, the minor child testified at the preliminary examination that she was in third grade when the touching occurred, but stated at trial that she was in first grade, and defense counsel questioned her on this point. Defense counsel also questioned the minor child about saying at the preliminary examination that she did not tell her mother that the touching occurred because she did not think that her mother would believe her. Additionally, defense counsel impeached the minor child regarding the sleeping arrangements at defendant's house. The minor child first testified that she slept in a second bed that was located in the room of defendant's son, but later said that defendant and his son switched rooms, and after the switch, she slept in the same bed with defendant's son. Defendant, his son, and his mother testified that there was only ever one bed in the room of defendant's son, and he and the minor child would sleep in the same bed whenever she slept over. Defense counsel highlighted the inconsistencies in the minor child's testimony during closing argument, noting that the minor child fabricated that defendant had a dragon tattoo, and said that she was in different grades when the touching happened. She also noted the minor child's testimony at the preliminary examination that she referred to her foster father as "dad," but denied doing so at trial.

Deciding what questions to ask the minor child and how to potentially impeach the minor child as a witness was within defense counsel's discretion as trial strategy. *Horn*, 279 Mich App at 39. Defense counsel questioned and impeached the minor child regarding the major details of her allegations about which the minor child gave inconsistent statements. It is important to note that the minor child was only 12 years old when she testified at trial, 10 years old when she gave the Care House interview, and 11 years old at the preliminary examination. At the Care House interview, the interviewer told the minor child that she had to tell the truth, and the minor child said that she would. The minor child took the witness oath to tell the truth before testifying at the preliminary examination and trial. The minor child testified that she knew she had to tell the truth on all three occasions, and she did, but there were some things that she did not remember at different times. This is understandable for a child her age. It may have been defense counsel's strategy to be sensitive in questioning the minor child as she was still young, and testifying about a traumatic event.

### C. FABRICATION THEORY

Third, defendant asserts that defense counsel was ineffective for failing to introduce evidence to support a theory that the minor child fabricated the allegations against defendant to stay with her foster family, rather than return to her mother's care. We disagree.

Defendant asserts that defense counsel had access to notes from a parenting time visit in which the minor child told her mother that the foster parents brought the children on an expensive trip to a water park, and that the minor child's mother could not afford such a trip. Defendant argues that defense counsel should have introduced this evidence at trial, as it suggested that the minor child fabricated the abuse in order to remain with her foster family.

-4-

Defendant correctly represents that the parenting time report from April 14, 2015 indicated that the children were excited to tell their mother about their trip to the water park during parenting time. They told her that they stayed for four days and three nights, and the trip cost over $1,000. The minor child told her mother that her mother could not afford such a trip, which made minor child's mother look upset, but she did not respond. Although defense counsel did not seek testimony regarding the cost of the water park trips, she did address them, which demonstrates her familiarity with the parenting time report. Specifically, on cross-examination, the foster father testified that he and the foster mother brought the minor child and her brothers to the Kalahari Water Park in Ohio three times. The first trip was for one night, the second trip was for three nights, and the third trip was for two nights.

It is within the trial attorney's discretion to choose how to question a witness and what evidence to present. *Horn*, 279 Mich App at 39. It is possible that defense counsel thought the questioning, in combination with the foster father's testimony that his home was 5,000 square feet, each child had their own bedroom, and the children enjoyed interacting with his two dogs, was sufficient to demonstrate that the foster parents treated the minor child and her brothers well. Defense counsel also questioned the foster father about the minor child calling him "dad." The foster father testified that although the minor child never called him "dad" to his face, teachers had informed him that the minor child referred to the foster parents as "mom and dad." Defense counsel further drew attention to the fact that the minor child had recounted to law enforcement that the "best day of her life" was a day she had gotten to spend entirely with the foster father. Based on the foregoing, we conclude that defense counsel fully pursued the theory that the minor child had fabricated the assault in order to remain with the foster family. We reject defendant's claims to the contrary.

## D. MRE 404(B) EVIDENCE

Fourth, defendant argues that defense counsel was ineffective for failing to object to the testimony of the minor child's mother as violative of MRE 404(b). Specifically, defendant claims that the testimony of the minor child's mother impermissibly introduced evidence of prior bad acts which was not disclosed by the prosecution before trial. We disagree.

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The following factors must be present for the trial court to admit other acts evidence:

First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402, as enforced through MRE 104(b)[.]" Third, the

-5-

probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004), quoting *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).]

At trial, the minor child's mother was asked on direct examination if, at some point, there was a breakdown in her relationship with defendant. Minor child's mother said that there was, and when asked when the breakdown occurred, she replied:

> It was when [defendant] was my payee and there was some money went missing and I guess there was some confusion with my bank account and his bank account and some of his bills got trans [sic] – hit with my account and made my account overdraft and –

The minor child's mother testified that after this issue with money in January 2014, she ended the relationship.

Defendant argues that defense counsel was ineffective because she did not object to this testimony as inadmissible under MRE 404(b): it was evidence of other wrongs or acts, and the prosecution did not provide notice of its intent to admit such evidence. However, the testimony of minor child's mother does not clearly imply that defendant stole money from her, as defendant argues on appeal. Rather, the purpose of the minor child's mother's testimony was to explain that there was a breakdown in her relationship with defendant following confusion with their bank accounts that resulted in her account being over drafted. Evidence related to the money issue between defendant and minor child's mother was not admitted to prove that defendant had a propensity to commit criminal sexual conduct. Rather, the prosecution asked minor child's mother *when* she broke up with defendant, not *why*. The prosecution was seeking to establish a time frame of the relationship between defendant and the minor child's mother to establish the period of time when the minor child stopped going to defendant's house, which was relevant to the sequence of events of the sexual assault and the minor child's disclosure.

We also note that failing to object to evidence can be sound trial strategy. *Unger*, 278 Mich App at 242. Defense counsel may have believed that it was in defendant's best interest not to object to the testimony as it would draw undue attention. See *Horn*, 279 Mich App at 40. In addition, "[c]ounsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Defense counsel may have thought that an objection to the testimony of the minor child's mother would have been futile as there were no valid grounds upon which to raise an objection. Again, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness.

## E. BURDEN OF PROOF

Fifth and finally, defendant argues that defense counsel's misstatement of the burden of proof during her closing argument constituted ineffective assistance of counsel, and harmed defendant.

During closing argument, defense counsel discussed the gravity of the crime that defendant was accused of, and the consequences that follow being convicted of criminal sexual conduct. She argued that the charges were based on false allegations, and the jury had to "double-check" and "triple-check" that the minor child told the truth because of the stigma associated with committing a sex crime against a child. Then defense counsel stated:

> [Defendant] has to prove a false allegation. Nobody else here has any evidence that this actually happened. False accusations of sexual abuse occur more often than people think. However, the problem isn't the frequency, but the inability to prove the falseness. Today we have [the minor child's] word against [defendant's] word. Sometimes it's hard for a jury to not believe a child, but I want you to think about everything that was said, every inconsistency, which actually turned out to be an actual falsehood. We admitted it on the stand.

> The prosecutor has to prove reasonable likelihood.

In context, defense counsel's statements were made to bolster her argument that the minor child's allegations were false. Decisions concerning what evidence to highlight during closing argument are matters of trial strategy. *Horn*, 279 Mich App at 39. Defense counsel's decision to focus her theory of the case around a false accusation shall not be second-guessed by this Court in hindsight. *Unger*, 278 Mich App at 242-243.

Although defense counsel misstated the burden of proof in her closing argument, the jury was informed of the proper standard multiple times. During preliminary jury instructions, the jury was told that defendant was presumed innocent, and he could not be found guilty unless the jury was satisfied that the prosecution proved every element of the crime beyond a reasonable doubt. The jury was informed that defendant did not have to prove his innocence or do anything. Right after defense counsel misspoke during her closing argument, the prosecutor stated during rebuttal that it was the prosecution's burden to prove beyond a reasonable doubt that defendant committed second-degree criminal sexual conduct. Then the jury was given final jury instructions, and the trial judge stated:

> It is my duty to instruct you on the law. You must take the law as I give it to you. If a lawyer says something different about the law, follow what I say.

The jury was again instructed that defendant was presumed innocent, defendant did not have to prove his innocence, and the prosecution had to prove the elements of the crime beyond a reasonable doubt for the jury to find defendant guilty.

"As a general rule, juries are presumed to follow their instructions." *People v Mette*, 243 Mich App 318, 330-331; 621 NW2d 713 (2000). And jury instructions are presumed to cure most errors. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Defendant argues that defense counsel's inexperience trying a criminal case led her to misstate the burden, and therefore, was below an objective standard of reasonableness under professional norms. *Lockett*, 295 Mich App at 187. However, defendant must also demonstrate that he was prejudiced by defense counsel's error. *Id*. Although defense counsel misstated the burden of proof and presumption of innocence in her closing argument, defendant was not prejudiced by

this misstatement because the jury was instructed on the proper burden of proof and presumption of innocence several times. The jury was instructed to follow the court's instructions regarding the law when it differed from that provided by any attorney. It is presumed that the jury instructions cured defense counsel's error in the recitation of the law, and it is presumed that the jury followed the instructions provided by the court. *Mette*, 243 Mich App at 330-331; *Abraham*, 256 Mich App at 279. Therefore, defendant was not provided ineffective assistance of counsel based on defense counsel's closing argument.

We note that " '[t]he cumulative effect of several minor errors may warrant reversal where the individual errors would not.' " *Unger*, 278 Mich App at 258, quoting *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003). Although defendant alleges many errors, the only specific error in defense counsel's performance was her misstatement of the burden of proof. Because there is only one individual error, there is no cumulative effect warranting reversal. *Unger*, 278 Mich App at 258.

## II. ENTITLEMENT TO EVIDENTIARY HEARING

Defendant also argues that he is entitled to a remand for a *Ginther* hearing because he needs to develop and perfect his record on appeal in order to bolster his claims of ineffective assistance of counsel. We disagree.

A trial court's decision whether to hold an evidentiary hearing is reviewed for an abuse of discretion. *Unger*, 278 Mich App at 216-217. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes."

A defendant has the burden of establishing the factual predicate for his claims. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). A *Ginther* hearing is held to provide a defendant with an opportunity to present facts or admit evidence to establish claims of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999); *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973). A defendant is entitled to a *Ginther* hearing if he can demonstrate that further development of facts outside the record is necessary for him to make ineffective assistance of counsel claims on appeal. *Ginther*, 390 Mich at 443. A defendant is not entitled to relief based on a trial court's denial of a *Ginther* hearing if this Court is not persuaded that further factual development would advance the defendant's claims. *Chapo*, 283 Mich App at 368-369.

Below, defendant advances some of the same reasons why he is entitled to a *Ginther* hearing or new trial that he advances on appeal; others defendant has abandoned. However, based on our review of the record, we cannot conclude that the trial court abused its discretion by granting defendant the requested relief. At the hearing held on this motion, the trial court provided its findings regarding each claim based on the record, withholding its ruling regarding the consultation of an expert witness only, and the record was sufficient for the trial court to make such findings of fact. Moreover, it is not apparent that further factual development would have advanced his claims. *Ginther*, 390 Mich at 443. All of the errors alleged by defendant are based on his allegation that defense counsel was not a criminal defense attorney, and therefore, inexperienced in trying a criminal case, especially a criminal sexual conduct case with a minor victim. Defendant's appellate counsel asserted that defense counsel told appellate counsel that

she was not a criminal defense attorney, and had not tried a similar matter. But mere inexperience itself does not establish ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 415; 639 NW2d 291 (2001). Therefore, the trial court's decision to deny defendant's request for a *Ginther* hearing did not fall outside the range of principled outcomes, and remand is not required.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Kathleen Jansen